UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23029-CIV-MCALILEY
(CONSENT CASE)

LAWRENCE S. FORMAN,

    Plaintiff,

vs.

W. ALLEN MORRIS and ALHAMBRA
EXECUTIVE PARKING COURTYARD, LLC,
d/b/a COLLECTOR CAR STORAGE,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS; DENYING MOTION TO STAY

Pending before the Court is Defendants' Motion to Dismiss [DE 8] and Plaintiff's Motion to Stay Proceedings [DE 21]. For the reasons set forth below, Defendants' Motion to Dismiss is granted, and Plaintiff's Motion to Stay is denied as moot.

### I. BACKGROUND

This case arises from an alleged copyright infringement. Plaintiff, Lawrence S. Forman ("Forman"), owns and operates Carriage House Vehicle Storage, Inc., a vehicle storage facility. (*See* Complaint ("*Compl.*") [DE 1] at ¶ 4). In connection with his business, Forman provides prospective clients with an information package describing the services provided by Carriage House. (*See id.* at ¶ 8). Forman also has a website featuring the same

descriptive information of the services offered by Carriage House.[1] (*See* Plaintiff's Response to Defendants' Supplement to Motion to Dismiss ("*Resp. to Supp.*") [DE 29] at p. 1-2). Forman authored the text in 2007 (*see id.* at ¶ 9), and before bringing this action against Defendants, Forman applied for a copyright of the text on his website. (*See id.* at ¶13).

On the "Welcome" page of the website, the following text appears:

Dear Vehicle Enthusiast,

Did you know that every time you take a step to protect your vehicle, you're increasing, or at least, maintaining its value. Carriage House Vehicle Storage facility is available to you to help ensure that your valuable and important vehicle are properly stored and appropriately serviced. Carriage House Vehicle Storage facility is willing to provide various forms of assistance to help you take care of your vehicle.

As a potential new customer, we would like to offer you an opportunity to visit our facility and receive a discount on your first three months of storage. Please call us so that you can gain some peace of mind and see the benefits that we'll provide by using our services. After you have reviewed the enclosed material, please call for an opportunity to meet with our staff and to receive further information on what we do and how we do it.

Sincerely,

Lawrence S. Forman
Carriage House Vehicle Storage

http://carriagehousevehiclestorage.com/welcome/. The site's "Home" page reads:

---

[1] In his Complaint, Forman does not mention the website; he refers only to the printed information package. However, he does not attach a copy of his information package to the Complaint. Instead, Forman attaches copies of Defendants' printed advertising materials, which he claims are virtually identical to his own printed information package. For purposes of a motion to dismiss, the Court takes Forman's allegations as true.

Why use Carriage House Vehicle Storage

We know that storing classic cars or other vehicles can be tricky. You don't want to add unnecessary miles to keep the vehicle in tune, yet not using it can harm it as well. You don't want to make your garage unusable for your everyday vehicles, but you want your classic nearby. The answer is Carriage House Vehicle Storage, a facility in Miami, near Coral Gables, Pinecrest and South Miami, home to many of South Florida's car collectors, and operated by a team of car experts and fellow collectors and enthusiasts.

What Do we offer?

The Carriage House Vehicle Storage offers what was once only available to private collectors with tremendous resources: the perfect home for your important automobiles, motorcycles, boats, or other precious vehicles. We provide a specially designed facility, humidity and temperature control, comprehensive video security and a complete range of storage and motoring services tailored to meet your needs. Outdoor storage in a fenced, protected area is also available. We offer pick up and delivery, battery and tire maintenance and detailing. All of this is what makes Carriage House Vehicle Storage, the best place to store your prestige or classic vehicle, long term or short term.

http://carriagehousevehiclestorage.com/. The "Facilities & Location" page contains the

following information:

Our facility offers a secure location equipped with:

Close-Circuit Cameras
Climate Control
Controlled Humidity Levels

Benefits

Freedom From Fear of Theft
Freedom From Fear of Vandalism
Prevents Dry Rot
Safe and Well Cared For
Protects Metal, Leather and Fabric

http://carriagehousevehiclestorage.com/facilities-location/.

In December, 2008, an employee of Defendant, Alhambra Executive Parking Courtyard ("Alhambra"), entered Forman's vehicle storage facility, stating he needed information for the storage of his boss's personal vehicle. (*See Compl.* at ¶ 10). Forman gave the employee an information packet containing the text listed above. (*See id*). Defendants, W. Allen Morris ("Morris") and Alhambra copied much of the text in the information packet, often word-for-word, and used the text in advertisements for Alhambra's vehicle storage service. (*See id*. at ¶ 11). The text found in Alhambra's advertising materials reads as follows:

> Dear Vehicle Enthusiast,
>
> Did you know that every time you take a step to protect your vehicle, you're increasing, or at least maintaining its value? The Collector Car Storage facility is available to you to help ensure that your valuable and important vehicle is properly stored and appropriately serviced. Collector Car Storage facility is willing to provide various forms of assistance to help you take care of your vehicle.
>
> As a potential new customer, we would like to offer you an opportunity to visit our facility. Please call us so that you can gain some peace of mind and see the benefits that we'll provide by using our services. Please call for an opportunity to receive further information on what we do and how we do it. We would be pleased to personally show you our "TLC" Facilities
>
> Sincerely,
>
> Barbara Moore
> Collector Car Storage
> 121 Alhambra Plaza, PH-1
> Coral Gables, Florida 33134
> (305) 443-1000

(*Id.* at p. 8, Ex. A).

Defendants' materials also include the following:

> Why use Alhambra EPC, L.L.C. d/b/a Collector Car Storage ("CCS") in Coral Gables?
>
> We know that storing classic cars or other vehicles can be tricky. You don't want to add unnecessary miles to keep the vehicle in tune, yet not using them can harm them as well. You don't want to make your garage unusable for your everyday vehicles, but you want your classic nearby. The answer is Collector Car Storage, a facility in Coral Gables, Miami, home to many of South Florida's car collectors.
>
> What Do we offer?
>
> The Collector Car Storage offers what was once only available to private collectors with tremendous resources: the perfect home for your important automobiles, motorcycles, or other precious vehicles. We provide a specially designed facility, comprehensive video security and a complete range of storage services tailored to meet your needs. All of this is what makes Collector Car Storage the best place to store your prestige or classic vehicle, long term or short term.

(*Id.* at p. 9).

> <u>Our facility offers a secure location equipped with:</u>
>
> Closed-Circuit Security Cameras
> Security gates/locked off parking area
> Located on the 8th & 9th Parking Levels
>
> <u>Benefits</u>
>
> Freedom From Fear of Theft
> Freedom From Fear of Vandalism
> Card Key Access with your photo

(*Id.* at p. 10).

5

Forman filed suit against Defendants, alleging copyright infringement by both Morris and Alhambra. Defendants initially moved to dismiss the Complaint because no registration certificate of copyright was attached to the Complaint, and no registration appeared in the Copyright Office database under Forman's name. (*See* Defendants' Motion to Dismiss ("*Mot. Dis.*") [DE 8] at p. 2). Defendants argued that a copyright registration is a jurisdictional prerequisite to filing a copyright suit, and that without it, the Court had no subject matter jurisdiction. (*See id*). The parties filed supplements to their memoranda on dismissal, and Forman moved the Court to stay the case until he received his registration certificate. (*See* Plaintiff's Motion to Stay ("*Mot. Stay*") [DE 21]). While the motions were pending, Forman received and filed his copyright registration for the text on his website. (*See* Notice of Filing Certificate of Registration ("*Reg.*") [DE 27]). Forman argues that the filing of the registration rendered Defendants' Motion to Dismiss moot. Defendants, however, claim the Complaint must nonetheless be dismissed for the reasons discussed below.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Id.* (quoting *Twombly*, 550 U.S. at 555)). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." *Brooks*, 116 F.3d at 1368.

"A court's review on a motion to dismiss is 'limited to the four corners of the complaint.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Id.*

## III. ANALYSIS

Statutory copyright protection provides, in relevant part, that:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

(1) literary works;
(2) musical works, including any accompanying words;
(3) dramatic works, including any accompanying music;
(4) pantomimes and choreographic works;
(5) pictorial, graphic, and sculptural works;
(6) motion pictures and other audiovisual works;
(7) sound recordings; and
(8) architectural works.

17 U.S.C. § 102. The statute further provides that "'[l]iterary works' are works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." 17 U.S.C. § 101.

Defendants claim that Forman's Complaint is subject to dismissal because the Complaint claims Forman's information packages are protected by copyright, and that Defendants infringed that copyright, when in fact, the only copyright Forman has procured is for his website. Defendants state, "contrary to what was alleged in the Complaint . . . there was no copyright registration filed for this information package, which is the only subject of the infringement claim." (Defendants' Supplement to Motion to Dismiss ("*Def. Supp.*") [DE

28] at p. 2). Defendants go on to argue that

> It is axiomatic that a copyright registration must be for the particular version of a work that was actually infringed. *Hawes, James, Copyright Registration Practice 23.7, at 23-14 (2009)*. See also *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 2008 U.S. App. LEXIS 10354, 86 U.S.P.Q. 2d (BNA) 1661 (11th Cir. Fla. 2008) citing *I.M.S. Inquiry Management Systems, Ltd., v. Berkshire Information Systems, Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004).

*Id.*

The cases cited by Defendants do not stand for the proposition they suggest. In *Oravec*, the court found the plaintiff could not support a claim for infringement where he attempted to enforce the copyright of a derivative work based on aspects of an unregistered preexisting work. 527 F.3d at 1231. The copyright statute defines a derivative work as follows:

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement . . . art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101; *see Jarvis v. K2 Inc.*, 486 F.3d 526, 531 (9th Cir. 2007).

In this case, Forman is not seeking to enforce copyright protection for a preexisting work through the registration of a derivative work. Forman contends that the text on the website and in the information package is identical. In his memorandum responding to the motion to dismiss, Forman submitted printed copies of the copyrighted text on the website, and a comparison of that text with the Defendants' information packages shows that the

language is nearly identical.

The plain language of the statue makes clear that what is protected by copyright law is the original work of authorship, not the medium in which the original work is found. As one court explained, "it is not the book, i.e., the paper and binding, that is copyrightable, but its contents." *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 800 (6th Cir. 2005); *see also Jarvis*, 486 F.3d at 532 (holding a work retains its copyrightable status across different media: "[a] derivative work remains derivative when it is scanned and placed online, just as a collective work would remain collective if it were transferred from one medium to another"). Similarly here, it is the language, created by Forman, that is protected by his copyright, not simply his website. The fact that Defendants allegedly copied the text from the information package, while the text received its copyright protection on the website, is irrelevant. The original work of authorship at issue here is the selection of words chosen by Forman to describe the services offered by his business. Those particular words, in that particular order, are the subject of copyright protection.

While this Court has been unable to find case law in which the same *printed* language is protected by a registered copyright in one medium, but is infringed in another medium, it has identified an analogous line of cases regarding film. In these cases, parties had developed software by which to circumvent the encryption protection contained in DVDs. In each case, courts acknowledged that the film studios owned the copyright of the film *content*, and although the DVD format was not the original medium in which the copyright

was registered, the protection unequivocally extended to the DVDs.[2]

In *Universal City Studios v. Corley*, 273 F.3d 429, 436 (2d Cir. 2001), for example, plaintiff sued a defendant who published a magazine and website geared for "hackers," and provided information that would allow individuals to bypass encryption technology that prevents DVDs from being copied. *Id.* at 435. The court noted that "[t]he movie studios were reluctant to release movies in digital form until they were confident they had in place adequate safeguards against piracy of their copyrighted movies." *Id.* at 436. Such language clearly indicates that the content of the movie itself enjoys copyright protection, which extends into whatever new medium the movie is distributed. The court ultimately upheld the lower court's injunction against the defendants, and held that the defendants were "barred from trafficking in a decryption code that enables unauthorized access to copyrighted materials." *Id.* at 459.

The case of *321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085, 1090 (N.D. Cal.

---

[2] The idea that copyright protects content regardless of its medium was also noted by the Tenth Circuit as it considered the difference between trademark protection and copyright protection:

> [o]ur conclusions are supported by the distinction between trademarks and copyrights. Trademark is meant to identify goods so that a customer will not be confused as to their source. Copyright is intended to protect the owner's right in an abstract design or other creative product. These differing purposes inform the different rights each law creates. "Copyright law gives the author the right to prevent copying of the copyrighted work in any medium. Trademark law prevents the use of a similar mark on such goods or services as would probably cause confusion. Thus, the scope of rights in copyrights and trademarks is defined quite differently."

*United States v. Giles*, 213 F.3d 1247, 1252 (10th Cir. 2000) (internal citation omitted).

2004), involves similar findings and holdings. In *321 Studios*, plaintiff was a company that sold software to copy DVDs. *Id.* at 1089. Plaintiff filed a complaint for declaratory relief, asking the court to find that it was not in violation of the Digital Millenium Copyright Act ("DMCA"), or that the DMCA as unconstitutional. *Id.* The court explained that "[m]ost defendants ('the Studios') are members of the Motion Picture Association of America ('MPAA'). They are owners of copyrights in motion pictures, and produce and/or distribute DVDs that contain the copyrighted material." *Id.* at 1090. Again, the court acknowledged that the defendants owned the copyrights to the motion pictures, not merely the original film format, and the copyright protection extended to the DVD version of the film as well. And again, the court enjoined the plaintiff from manufacturing or distributing software to enable copying encrypted DVDs. *Id.* at 1108.

In *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 222 (S.D.N.Y. 2000), the court explained why DVD encryption circumvention technology violated the rights of copyright holders:

> This is quite clear in the specific context of this case. Plaintiffs are eight major motion picture studios which together are largely responsible for the development of the American film industry. Their products reach hundreds of millions of viewers internationally and doubtless are responsible for a substantial portion of the revenue in the international film industry each year. To doubt the contribution of plaintiffs to the progress of the arts would be absurd. DVDs are the newest way to distribute motion pictures to the home market, and their popularity is growing rapidly. The security of DVD technology is central to the continued distribution of motion pictures in this format. The dissemination and use of circumvention technologies such as DeCSS would permit anyone to make flawless copies of DVDs at little

expense. Without effective limits on these technologies, copyright protection in the contents of DVDs would become meaningless and the continued marketing of DVDs impractical. This obviously would discourage artistic progress and undermine the goals of copyright.

*Id.* at 222.

Both the plain language of the statute quoted above, and case law, make clear that copyright protection covers the content of a work rather than the medium in which the work is held. Based on the allegations in Forman's Complaint, taken as true at the motion to dismiss stage, it appears that Forman enjoys copyright protection for the language contained in his website, not just the website itself.

Nevertheless, this Court must dismiss Forman's Complaint. Forman made no reference to his website in his Complaint; he first brought it to the Court's attention in his response to Defendants' motion to dismiss. This Court cannot rely upon materials beyond the Complaint to deny a motion to dismiss. *See Wilchombe,* 555 F.3d at 959. The Court nonetheless reviewed the website to understand the broader issues that underlie the dispute, and concludes that Forman can plead a viable claim. Forman's Complaint will therefore be dismissed without prejudice, with leave to file an Amended Complaint that references the website and the language contained therein.

## IV. CONCLUSION

In light of the foregoing, it is hereby ORDERED that:

1. Defendants' Motion to Dismiss **[DE 8]** is **GRANTED**.

2. Forman's Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. Forman may file an Amended Complaint **no later than July 20, 2010**.

2. Plaintiff's Motion to Stay **[DE 22]** is **DENIED as moot**.[3]

DONE AND ORDERED in chambers at Miami, Florida, this 6th day of July, 2010.

*[signature]*
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

cc: counsel of record

---

[3] Forman sought to stay this case until he received his copyright registration certificate. Because he has received the certificate, the Motion to Stay is moot.